## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Emily Ann Nelson,

    Plaintiff,

v.

Maximus Education, LLC d/b/a Aidvantage, Wells
Fargo Bank, National Association d/b/a Wells
Fargo Education Financial Services, Capital One
Financial Corporation, JPMorgan Chase Bank,
N.A., and Spring Oaks Capital LLC,

    Defendants.

Court File No. 24-CV-2067-PJS-TNL

**MAXIMUS EDUCATION, LLC
D/B/A AIDVANTAGE
ANSWER TO COMPLAINT**

Defendant Maximus Education, LLC d/b/a Aidvantage ("Aidvantage"), by and through

its attorneys, answers Plaintiff's Complaint as follows:

### INTRODUCTION

1.    This action arises out of Defendants' violations of the Fair Credit Reporting Act,

15 U.S.C. § 1681 *et seq.* ("FCRA").

**ANSWER NO. 1**:  This Paragraph does not contain factual allegations against

Aidvantage requiring a response.  To the extent a response is required, Aidvantage denies that it

violated the FCRA, or any other laws, and denies that Plaintiff is entitled to any relief against

Aidvantage.  Aidvantage denies any remaining allegations in this Paragraph.

### JURISDICTION

2.    Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §

1681.

**ANSWER NO. 2**:  This Paragraph contains legal conclusions to which no response is

required.  To the extent a response is required, Aidvantage does not contest jurisdiction as to

Plaintiff. Aidvantage denies any unlawful conduct occurred in this judicial district or elsewhere. Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of any remaining allegations in this Paragraph and, therefore, denies them.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct at issue occurred in this District, Plaintiff resides in this District, and Defendants conducts business in this District.

**ANSWER NO. 3**: This Paragraph contains legal conclusions to which no response is required. To the extent a response is required, Aidvantage does not contest venue as to Plaintiff, and, upon information and belief, admits only that Plaintiff resides in this District. Aidvantage denies any unlawful conduct occurred in this venue or elsewhere. Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of any remaining allegations in this Paragraph and, therefore, denies them.

**PARTIES**

4.      Plaintiff, Emily Ann Nelson (hereinafter "Plaintiff"), is a natural person who resides in the County of Dakota, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

**ANSWER NO. 4**: Upon information and belief, Aidvantage admits only that Plaintiff is a natural person who resides in Minnesota. Except as so admitted, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the remaining allegations in this Paragraph and, therefore, denies them.

5.      Defendant Maximus Education, LLC d/b/a Aidvantage (hereinafter "Defendant Aidvantage"), is a Delaware corporation duly authorized and qualified to do business in the State of Wisconsin with its principal place of business located at 1600 Tysons Boulevard, Suite 1400,

McLean, VA 22102.  Defendant Aidvantage has a registered agent for service in Wisconsin of

Corporation Service Company, 33 East Main Street, Suite 610, Madison, WI 53703.  Defendant

Aidvantage is a "furnisher" (also known as a "data furnisher") of consumer information pursuant

to 15 U.S.C. § 1681s-2(b).

**ANSWER NO. 5**:  This Paragraph contains legal conclusions to which no response is

required.  To the extent a response is required, Aidvantage admits only that it is a Delaware

corporation authorized and qualified to do business in the State of Wisconsin, it has a principal

place of business located at 1600 Tysons Boulevard, Suite 1400, McLean, VA 22102, and its

registered agent in Wisconsin is Corporation Service Company, 33 East Main Street, Suite 610,

Madison, WI 53703.  Aidvantage denies the remaining allegations in this Paragraph as stated.

6.     Defendant, Wells Fargo Bank, National Association d/b/a Wells Fargo Education

Financial Services (hereinafter "Defendant WF EFS"), is a national bank that is licensed to do

business in the State of Minnesota and regularly conducts business in said State.  Defendant WF

has a principal place of business located at 420 Montgomery Street, San Francisco, CA 94104.

Defendant WF EFS has an agent of service of Corporation Service Company, 2345 Rice Street,

Suite 230, Roseville, MN 55113.  Defendant WF EFS is a "person" as defined in 15 U.S.C. §

1681a(b) and a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

**ANSWER NO. 6**:  The allegations contained in this Paragraph are not asserted against

Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal

conclusions to which no response is required.  To the extent a response is required, Aidvantage is

without sufficient information or knowledge to form a belief as to the truth or falsity of the

allegations contained in this Paragraph and, therefore, denies them.

7.      Defendant Capital One Financial Corporation (hereinafter "Defendant Capital One") is a foreign corporation incorporated under the laws of the state of Delaware; is authorized to do business in the state of Minnesota; and has a principal executive office located at 1680 Capital One Drive, McLean, Virginia 22102.  Defendant Capital One is a "person" as defined in 15 U.S.C. § 1681a(b) and a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

**ANSWER NO. 7**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

8.      Defendant JPMorgan Chase Bank, N.A. (hereinafter "Defendant Chase"), is a financial services company specializing in investment banking, small business and commercial banking, financial transaction processing, asset management, and private equity.  Defendant has a principal place of business located at 270 Park Avenue, New York, NY 10017.  Defendant Chase has an agent of service of CT Corporation System Inc., 1010 Dale Street N, St. Paul, MN 55117. Defendant Chase is a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

**ANSWER NO. 8**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

9.      Defendant Spring Oaks Capital LLC (hereinafter "Defendant Spring Oaks"), is a debt collection agency, is incorporated under the laws of the State of Washington, is licensed to do business in the State of Minnesota, and has a principal place of business located at 1400 Crossways Boulevard, Suite 100B, Chesapeake, WA 23320.  Defendant Spring Oaks has an agent of service of Corporation Service Company, 2345 Rice Street, Suite 230, Roseville, MN 55113.  Defendant Spring Oaks is a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

**ANSWER NO. 9**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

10.      The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

**ANSWER NO. 10**:  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage denies any allegations that are inconsistent with applicable law.

11.      The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with

regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. "
15 U.S.C. 1681(b).

**ANSWER NO. 11**:  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage denies any allegations that are inconsistent with applicable law.

12.     The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. 1681e(b).

**ANSWER NO. 12**:  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage denies any allegations that are inconsistent with applicable law.

13.     The credit reporting agencies, such as TransUnion and Experian, regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

**ANSWER NO. 13**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

14.     These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

**ANSWER NO. 14**:  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage denies any allegations that are inconsistent with applicable law.

15.     The credit reporting agencies, such as TransUnion and Experian, collect information from thousands of furnishers.

**ANSWER NO. 15**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

16.     The process by which the credit reporting agencies, such as TransUnion and Experian, receive, sort, and store information is largely electronic.

**ANSWER NO. 16**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

17.     Furnishers report credit information to credit reporting agencies, such as TransUnion and Experian, through the use of coded tapes that are transmitted to the credit reporting agencies, such as TransUnion and Experian, on a monthly basis through software known as Metro 2.

**ANSWER NO. 17**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

18.     The credit reporting agencies, such as TransUnion and Experian, take the credit information reported by furnishers and create consumer credit files.

**ANSWER NO. 18**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

19.     The credit reporting agencies, such as TransUnion and Experian, maintain credit files on more than 200 million consumers.

**ANSWER NO. 19**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

20.     Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to as "tradelines" within the industry).

**ANSWER NO. 20**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them

21.     The credit reporting agencies, such as TransUnion and Experian, know that different consumers can have similar names.

**ANSWER NO. 21**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

22.     The credit reporting agencies, such as TransUnion and Experian, know that different consumers can have similar social security numbers.

**ANSWER NO. 22**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

23.     The credit reporting agencies, such as TransUnion and Experian, know that different consumers with similar names can also have similar social security numbers.

**ANSWER NO. 23**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

24.     The credit reporting agencies, such as TransUnion and Experian, match tradelines to a consumer credit file by comparing the information about the consumer associated with the tradeline to the information TransUnion and Experian maintains about the consumer in the consumer's credit file or files.

**ANSWER NO. 24**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

25.     The credit reporting agencies, such as TransUnion and Experian, accomplish this matching of credit information to consumer credit files using certain matching algorithms or database rules.

**ANSWER NO. 25**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

26.     Sometimes credit reporting agencies, such as TransUnion and Experian's matching algorithms match information belonging to one consumer to the credit file of another consumer.

**ANSWER NO. 26**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

27.     [sic] resulting in what is commonly known in the industry as a mixed or merged credit file.

**ANSWER NO. 27**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

28.     A mixed or merged credit file is the result of the credit reporting agencies, such as TransUnion and Experian, inaccurately merging credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

**ANSWER NO. 28**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage

is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

29.     There are many different possible causes for the merging of credit files but all of them relate in one way or another to the algorithms (the database rules) used by the credit reporting agencies, such as TransUnion and Experian, to match credit information, including bankruptcy filing information, to a particular consumer's credit file.

**ANSWER NO. 29**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

30.     The success or failure of these algorithms or rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to the credit reporting agencies, such as TransUnion and Experian.

**ANSWER NO. 30**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

31.     A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal or "indicative" information (e.g., name, social security number, address, date of birth, etc.) by the furnishers to the credit reporting agencies, such as TransUnion and Experian.

**ANSWER NO. 31**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage

is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

32.     These rules also determine which credit files are merged to create a complete consumer report.

**ANSWER NO. 32**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

33.     Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

**ANSWER NO. 33**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

34.     Consumer credit plays a major role in the lives of American consumers entering into the American marketplace and the economic system in general.  Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing rentals, and a broad range of other transactions.  Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW 39-40 (2nd ed. 2006).

**ANSWER NO. 34**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is

without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

35.     Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. 15 U.S.C. § 1681(a)(1).

**ANSWER NO. 35**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

36.     The FCRA was created to "ensure fair and accurate credit reporting, promote efficiency, and protect consumer privacy."  *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

**ANSWER NO. 36**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

37.     The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act. Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of *faults or incomplete information in a credit report*," and entered an initial draft of what would eventually

become the FCRA into the Congressional Record.  Anthony Rodriguez et al., FAIR CREDIT
REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)) (emphasis added).

**ANSWER NO. 37**:  The allegations contained in this Paragraph are not asserted against
Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage
is without sufficient information or knowledge to form a belief as to the truth or falsity of the
allegations contained in this Paragraph and, therefore, denies them.

38.     Senator Proxmire listed five types of abuses requiring Congressional response,
including biased or one-sided information and incomplete information.  Anthony Rodriguez et
al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

**ANSWER NO. 38**:  The allegations contained in this Paragraph are not asserted against
Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage
is without sufficient information or knowledge to form a belief as to the truth or falsity of the
allegations contained in this Paragraph and, therefore, denies them.

39.     Congress considered inaccurate and misleading information to be the most serious
problem.  Anthony Rodriguez et al., FAIR CREDIT REPORTING 10 (5th ed. 2002).

**ANSWER NO. 39**:  The allegations contained in this Paragraph are not asserted against
Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage
is without sufficient information or knowledge to form a belief as to the truth or falsity of the
allegations contained in this Paragraph and, therefore, denies them.

40.     The FCRA applies to situations in which information relevant to a consumer's
"credit worthiness, credit standing, credit capacity, character, general reputation, personal
characteristics, or mode of living" is collected.  Anthony Rodriguez et al., FAIR CREDIT
REPORTING 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

**ANSWER NO. 40**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

41.     An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's credit worthiness, but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

**ANSWER NO. 41**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

42.     Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act.  The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes.  These provisions were originally scheduled to sunset in 2003, but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003.  Federal Trade Commission Staff: 40 Years of Experience with the

Fair Credit Reporting Act, pp. 1, 2, 92.  Retrieved from the FTC website:

http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.

**ANSWER NO. 42**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

43.    The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

**ANSWER NO. 43**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

44.    The credit reporting agencies, such as TransUnion and Experian, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

**ANSWER NO. 44**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage

is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

45.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."  It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

**ANSWER NO. 45**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

46.     Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

**ANSWER NO. 46**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

47.     Metro II codes are used on an industry wide form known within the credit industry as an Automated Credit Dispute Verification ("ACDV") electronic form.

**ANSWER NO. 47**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage admits only that the Metro II codes are used within the credit reporting industry.  Except as so

admitted, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

48.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

**ANSWER NO. 48**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

49.     These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

**ANSWER NO. 49**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

**FACTUAL ALLEGATIONS**

50.     Plaintiff believes her identity has been mixed up with another individual, that of a Emily R. Nelson (hereinafter "Emily R.") prior to March of 2024 and possibly as far back as 2012.

**ANSWER NO. 50**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them and demands strict proof thereof.

51.     On or about March 15, 2024, Plaintiff saw that her FICO score had dropped via her Wells Fargo bank account.

**ANSWER NO. 51**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them and demands strict proof thereof.

52.     Plaintiff's Wells Fargo account showed credit information based on Experian data.

**ANSWER NO. 52**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them and demands strict proof thereof.

53.     Plaintiff checked her Experian and TransUnion credit reports and noticed a plethora of inaccurate information.

**ANSWER NO. 53**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them and demands strict proof thereof.

54.     Specifically, Plaintiff noticed the following accounts on her Experian and TransUnion credit report not belonging to her:

- BANK OF NORTH DAKOTA 36000002**** Opened 08/02/2016;
- BANK OF NORTH DAKOTA 36000002**** Opened 01/23/2017;
- CAPITAL ONE 517805830944**** Opened 11/09/2022;
- CAPITAL ONE 414709849594**** Opened 06/16/2016;
- JPMCB CARD SERVICES 426684164683**** Opened 04/24/2017;
- JPMCB CARD SERVICES 426684145773**** Opened 01/25/2016;
- UPSTART NETWORK INC L159**** Opened 08/18/2021;
- US BANK CACS CC 403784007878**** Opened 01/01/2016;
- NCA 95037** Opened 08/10/2023;
- SPRING OAKS CAPITAL LLC 11214**** Opened 09/29/2022;
- DEPT OF ED/AIDV 93042157071E0012011**** Opened 09/02/2011;
- DEPT OF ED/AIDV 93042157071E0022013**** Opened 09/12/2013;
- DEPT OF ED/AIDV 93042157071E0032014**** Opened 09/08/2014;
- DEPT OF ED/AIDV 93042157071E0042015**** Opened 09/08/2015;
- DEPT OF ED/AIDV 93042157071E0052016**** Opened 09/02/2016;
- DEPT OF ED/AIDV 93042157071E0062017**** Opened 09/01/2017;
- DEPT OF ED/AIDV 93042157071E0072017**** Opened 09/01/2017;
- WELLS FARGO EFS 277517712314**** Opened 09/20/2013; and
- WELLS FARGO EFS 277517712314**** Opened 09/14/2012.

**ANSWER NO. 54**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them and demands strict proof thereof.

55.    On March 15, 2024, after noticing the inaccurate accounts on her credit reports, Plaintiff also contacted the Apple Valley Police Department and made a police report for identity theft, believing that her identity had been stolen.  Apple Valley Police Department Case Number #AV24001550.

**ANSWER NO. 55**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the

allegations contained in this Paragraph and, therefore, denies them and demands strict proof thereof.

**Experian Disputes**

56.     March 15, 2024, immediately after noticing the drop in her FICO score, Plaintiff contacted Experian via telephone and disputed the multiple incorrect, and inaccurate data information, such as her name, address, telephone number, SSN, and inaccurate account information listed above, pursuant to 15 U.S.C. § 1681i.

**ANSWER NO. 56**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them and demands strict proof thereof.

57.     On April 11, 2024, Plaintiff received dispute results from Experian and found Defendants Capital One, Chase, WF EFS, and Aidvantage verified to Experian that the disputed accounts were being reported correctly, in violation of 15 U.S.C. § 1681s-2(b).

**ANSWER NO. 57**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them and demands strict proof thereof.

*Defendant Capital One*

58.    Plaintiff's March 15, 2024, dispute specifically listed two accounts with Defendant Capital One, bearing account numbers 517805830944**** and 414709849594**** as not belonging to Plaintiff.

**ANSWER NO. 58**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

59.    Experian communicated Plaintiff's dispute to Defendant Capital One in automated consumer dispute verification ("ACDV") forms and copies of the dispute correspondence pursuant to 15 U.S.C. § 1681i(a)(2).

**ANSWER NO. 59**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

60.    In response, Defendant Capital One erroneously responded and verified to Experian that the 414709849594**** account belonged to Plaintiff but deleted the other account 517805830944****.

**ANSWER NO. 60**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

61.     Defendant Capital One failed to conduct a reasonable investigation into Plaintiff's March 15, 2024, dispute, failed to review all relevant information available to it, and failed to update and/or remove the inaccurate account history, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Code) to "XB," and, instead, incorrectly verified to Experian that the account was being reported correctly, in violation of 15 U.S.C. § 1681s-2(b).

**ANSWER NO. 61**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

62.     Plaintiff has suffered actual damages in the form of hopelessness, stress, irritation, loss of sleep, anger, frustration, anxiety, and the weakening and diminishment of her credit profile, creditworthiness, debt-to-income ratio, and credit score, as a direct and proximate result of Defendant Capital One's violations of the Fair Credit Reporting Act as described above.

**ANSWER NO. 62**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

63.     Defendant Capital One's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**ANSWER NO. 63**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal

conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

64.     Alternatively, Defendant Capital One's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

**ANSWER NO. 64**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

65.     Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant Capital One in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**ANSWER NO. 65**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

*Defendant Chase*

66.     Plaintiff's March 15, 2024, dispute specifically listed two accounts with Defendant Chase, bearing account numbers 426684164683**** and 426684145773**** as not belonging to Plaintiff.

**ANSWER NO. 66**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

67.     Experian communicated Plaintiff's dispute to Defendant Chase in automated consumer dispute verification ("ACDV") forms and copies of the dispute correspondence pursuant to 15 U.S.C. § 1681i(a)(2).

**ANSWER NO. 67**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

68.     In response, Defendant Chase erroneously responded and verified to Experian that the 426684145773**** account belonged to Plaintiff but deleted the other Chase account 426684164683****.

**ANSWER NO. 68**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

69.     Defendant Chase failed to conduct a reasonable investigation into Plaintiff's March 15, 2024, dispute, failed to review all relevant information available to it, and failed to update and/or remove the inaccurate account history, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Code) to "XB," and, instead,

incorrectly verified to Experian that the account was being reported correctly, in violation of 15 U.S.C. § 1681s-2(b).

**ANSWER NO. 69**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

70.    Plaintiff has suffered actual damages in the form of hopelessness, stress, irritation, loss of sleep, anger, frustration, anxiety, and the weakening and diminishment of her credit profile, creditworthiness, debt-to-income ratio, and credit score, as a direct and proximate result of Defendant Chase's violations of the Fair Credit Reporting Act as described above.

**ANSWER NO. 70**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

71.    Defendant Chase's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**ANSWER NO. 71**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

72.     Alternatively, Defendant Chase's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

**ANSWER NO. 72**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

73.     Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant Chase in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**ANSWER NO. 73**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

*Defendant WF EFS*

74.     Plaintiff's March 15, 2024, dispute specifically listed two accounts with Defendant WF EFS, bearing account numbers 277517712314**** (opened 09/20/2013) and 277517712314**** (opened 09/14/2012) as not belonging to Plaintiff.

**ANSWER NO. 74**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

75.     Experian communicated Plaintiff's dispute to Defendant WF EFS in automated consumer dispute verification ("ACDV") forms and copies of the dispute correspondence pursuant to 15 U.S.C. § 1681i(a)(2).

**ANSWER NO. 75**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

76.     In response, Defendant WF EFS erroneously responded and verified to Experian that the 277517712314**** account opened on 09/14/2012 belonged to Plaintiff but deleted the other account 277517712314**** (opened 09/20/2013).

**ANSWER NO. 76**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

77.     Defendant WF EFS failed to conduct a reasonable investigation into Plaintiff's March 15, 2024, dispute, failed to review all relevant information available to it, and failed to update and/or remove the inaccurate account history, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Code) to "XB," and, instead, incorrectly verified to Experian that the account was being reported correctly, in violation of 15 U.S.C. § 1681s-2(b).

**ANSWER NO. 77**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is

without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

78.     Plaintiff has suffered actual damages in the form of hopelessness, stress, irritation, loss of sleep, anger, frustration, anxiety, and the weakening and diminishment of her credit profile, creditworthiness, debt-to-income ratio, and credit score, as a direct and proximate result of Defendant WF EFS's violations of the Fair Credit Reporting Act as described above.

**ANSWER NO. 78**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

79.     Defendant WF EFS's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**ANSWER NO. 79**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

80.     Alternatively, Defendant WF EFS's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

**ANSWER NO. 80**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is

without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

81.     Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant WF EFS in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**ANSWER NO. 81**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

*Defendant Aidvantage*

82.     Plaintiff's March 15, 2024, dispute specifically listed seven accounts with Defendant Aidvantage, bearing account numbers 93042157071E0012011****, 93042157071E0022013****, 93042157071E0032014****, 93042157071E0042015****, 93042157071E0052016****, 93042157071E0062017****, and 93042157071E0072017**** as not belonging to Plaintiff.

**ANSWER NO. 82**:  Upon information and belief, Aidvantage admits only that Plaintiff's dispute listed seven accounts with Aidvantage.  Except as so admitted, Aidvantage denies the remaining allegations in this Paragraph and demands strict proof thereof.

83.     Experian communicated Plaintiff's dispute to Defendant Aidvantage in automated consumer dispute verification ("ACDV") forms and copies of the dispute correspondence pursuant to 15 U.S.C. § 1681i(a)(2).

**ANSWER NO. 83**:  Upon information and belief, Aidvantage admits only that Experian notified it of Plaintiff's dispute.  Except as so admitted, the remaining allegations in this Paragraph contain legal conclusions to which no response is required.  To the extent a response is required, Aidvantage denies them and demands strict proof thereof.

84.     In response, Defendant Aidvantage erroneously responded and verified to Experian that the 93042157071E0072017**** account belonged to Plaintiff but deleted the other accounts: 93042157071E0012011****, 93042157071E0022013****, 93042157071E0032014****, 93042157071E0042015****, 93042157071E0052016****, and 93042157071E0062017****.

**ANSWER NO. 84**:  Aidvantage denies the allegations in this Paragraph as stated and demands strict proof thereof.

85.     Defendant Aidvantage failed to conduct a reasonable investigation into Plaintiff's March 15, 2024, dispute, failed to review all relevant information available to it, and failed to update and/or remove the inaccurate account history, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Code) to "XB," and, instead, incorrectly verified to Experian that the account was being reported correctly, in violation of 15 U.S.C. § 1681s-2(b).

**ANSWER NO. 85**:  Aidvantage denies the allegations in this Paragraph and demands strict proof thereof.

86.     Plaintiff has suffered actual damages in the form of hopelessness, stress, irritation, loss of sleep, anger, frustration, anxiety, and the weakening and diminishment of her credit profile, creditworthiness, debt-to-income ratio, and credit score, as a direct and proximate result of Defendant Aidvantage's violations of the Fair Credit Reporting Act as described above.

**ANSWER NO. 86**:  Aidvantage denies the allegations in this Paragraph and demands strict proof thereof.

87.    Defendant Aidvantage's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**ANSWER NO. 87**:  Aidvantage denies the allegations in this Paragraph and demands strict proof thereof.

88.    Alternatively, Defendant Aidvantage's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

**ANSWER NO. 88**:  Aidvantage denies the allegations in this Paragraph and demands strict proof thereof.

89.    Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant Aidvantage in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**ANSWER NO. 89**:  Aidvantage denies the allegations in this Paragraph and demands strict proof thereof.

**TransUnion Disputes**

90.    On March 18, 2024, pursuant to 15 U.S.C. § 1681i, Plaintiff made an online dispute with TransUnion and disputed multiple inaccurate and incorrect information.

**ANSWER NO. 90**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them and demands strict proof thereof.

91.     Plaintiff followed up her online dispute with TransUnion with a written dispute

dated March 18, 2024, detailing the following information that was inaccurate and incorrect, and

believed to belong to Emily R:

> *My name is Emily Ann Nelson and I live at 8339 139th Ct Apple Valley, MN 55124. My birthday is 07-01-1993*
>
> *I am requesting that my name be updated in your system. It is currently listed as Emily R. Nelson and this is incorrect.*
>
> *I am also requesting that my birthday be also changed as my birthday is 07-01-1993. It is incorrectly listed as 07-20-1993.*
>
> *I am also asking that all incorrect address be removed and my correct address be updated in your system. My current address is 8339 139th Ct Apple Valley MN 55124.*
>
> *I have never lived at the following addresses:*
>
> *4201 33RD AVE S APT 106 FARGO, ND 58104-6975*
> *1110 COLLEGE ST N APT 1 FARGO, ND 58102-3490*
> *1103 35TH ST N APT 111 FARGO, ND 58102-3182*
> *2401 33RD AVE S APT 208 FARGO, ND 58104-6577*
> *9343 RUSSELL CIR S MINNEAPOLIS, MN 55431-2467*
> *1057 35TH ST N APT 108 FARGO, ND 58102-3186*
> *833 139TH STREET CT APPLE VALLEY, MN 55124*
> *9343 RUSSELL CIR S APT 111 BLOOMINGTON, MN 55431-2467*
> *11 BROADWAY STE 1515 NEW YORK, NY 10004-1318*
>
> *I am requesting that the following phone numbers be removed from your system. My current phone number is 651-236-0186.*
>
> *(612) 508-5096*
>
> *(952) 881-1940*
>
> *(800) 888-1300*
>
> *+(701) 235-3104*
>
> *(301) 868-5304*
>
> *(866) 707-4595*
>
> *(508) 509-5096*

*I am requesting that the following employers be removed. I am currently a teacher in ISD 191 and I previously worked at New Horizons*

*MIDCO JIMMY JOHNS*

*I am a victim of identity fraud and am also requesting the following information be removed from my credit report. This issue was brought to my attention on 03/15/2024. My credit and credit report data were correct before this date.*

*I have attached my credit report and circled the incorrect credit information and personal information.*
*BANK OF NORTH DAKOTA 36000002**** Opened 08/02/2016;*

*BANK OF NORTH DAKOTA 36000002**** Opened 01/23/2017;*

*CAPITAL ONE 517805830944**** Opened 11/09/2022;*

*CAPITAL ONE 414709849594**** Opened 06/16/2016;*

*JPMCB CARD SERVICES 426684164683**** Opened 04/24/2017;*

*JPMCB CARD SERVICES 426684145773**** Opened 01/25/2016;*

*UPSTART NETWORK INC L159**** Opened 08/18/2021;*

*US BANK CACS CC 403784007878**** Opened 01/01/2016;*

*NCA 95037** Opened 08/10/2023;*

*SPRING OAKS CAPITAL LLC 11214**** Opened 09/29/2022;*

*DEPT OF ED/AIDV 93042157071E0012011**** Opened 09/02/2011;*

*DEPT OF ED/AIDV 93042157071E0022013**** Opened 09/12/2013;*

*DEPT OF ED/AIDV 93042157071E0032014**** Opened 09/08/2014;*

*DEPT OF ED/AIDV 93042157071E0042015**** Opened 09/08/2015;*

*DEPT OF ED/AIDV 93042157071E0052016090216**** Opened 09/02/2016;*

*DEPT OF ED/AIDV 93042157071E0062017090117**** Opened 09/01/2017;*

*DEPT OF ED/AIDV 93042157071E0072017090117**** Opened 09/01/2017;*

*WELLS FARGO EFS 277517712314**** Opened 09/20/2013;*

*WELLS FARGO EFS 277517712314\*\*\*\* Opened 09/14/2012;*

*I am also requesting that the following inquires be removed from my credit report as these were not initiated by me.*

*TBOMMILESTONE requested on 02/20/2024*

*CAPITAL ONE requested on 11/09/2022*

**ANSWER NO. 91**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them and demands strict proof thereof.

92.     On April 10, 2024, Plaintiff received dispute results from TransUnion and found Defendants Capital One, Spring Oaks, and WF EFS verified to TransUnion that the disputed accounts were being reported correctly, in violation of 15 U.S.C. § 1681s-2(b).

**ANSWER NO. 92**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  Further, this Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them and demands strict proof thereof.

*Defendant Capital One*

93.     Plaintiff's March 2024, disputes specifically listed two accounts with Defendant Capital One, bearing account numbers 517805830944\*\*\*\* and 414709849594\*\*\*\* as not belonging to Plaintiff.

**ANSWER NO. 93**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

94.     TransUnion communicated Plaintiff's dispute to Defendant Capital One in automated consumer dispute verification ("ACDV") forms and copies of the dispute correspondence pursuant to 15 U.S.C. § 1681i(a)(2).

**ANSWER NO. 94**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

95.     In response, Defendant Capital One erroneously responded and verified to TransUnion that the 414709849594**** account belonged to Plaintiff but deleted the other account 517805830944****.

**ANSWER NO. 95**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

96.     Defendant Capital One failed to conduct a reasonable investigation into Plaintiff's March 15, 2024, dispute, failed to review all relevant information available to it, and failed to update and/or remove the inaccurate account history and, instead, incorrectly verified to TransUnion that the account was being reported correctly, in violation of 15 U.S.C. § 1681s-2(b).

**ANSWER NO. 96**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

97.     Plaintiff has suffered actual damages in the form of hopelessness, stress, irritation, loss of sleep, anger, frustration, anxiety, and the weakening and diminishment of her credit profile, creditworthiness, debt-to-income ratio, and credit score, as a direct and proximate result of Defendant Capital One's violations of the Fair Credit Reporting Act as described above.

**ANSWER NO. 97**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

98.     Defendant Capital One's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**ANSWER NO. 98**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

99.     Alternatively, Defendant Capital One's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

**ANSWER NO. 99**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage

is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

100.    Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant Capital One in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**ANSWER NO. 100**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

*Defendant Spring Oaks*

101.    Plaintiff's March 2024, disputes specifically listed an account with Defendant Spring Oaks, bearing account number 11214**** as not belonging to Plaintiff.

**ANSWER NO. 101**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

102.    TransUnion communicated Plaintiff's dispute to Defendant Spring Oaks in automated consumer dispute verification ("ACDV") forms and copies of the dispute correspondence pursuant to 15 U.S.C. § 1681i(a)(2).

**ANSWER NO. 102**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

103.    In response, Defendant Spring Oaks erroneously responded and verified to TransUnion that the 11214**** account belonged to Plaintiff.

**ANSWER NO. 103**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

104.    Defendant Spring Oaks failed to conduct a reasonable investigation into Plaintiff's March 18, 2024, dispute, failed to review all relevant information available to it, and failed to update and/or remove the inaccurate account history and, instead, incorrectly verified to TransUnion that the account was being reported correctly, in violation of 15 U.S.C. § 1681s-2(b).

**ANSWER NO. 104**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

105.    Plaintiff has suffered actual damages in the form of hopelessness, stress, irritation, loss of sleep, anger, frustration, anxiety, and the weakening and diminishment of her credit profile, creditworthiness, debt-to-income ratio, and credit score, as a direct and proximate result of Defendant Spring Oak's violations of the Fair Credit Reporting Act as described above.

**ANSWER NO. 105**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

106.    Defendant Spring Oaks' conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**ANSWER NO. 106**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

107.    Alternatively, Defendant Spring Oaks' violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

**ANSWER NO. 107**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

108.    Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant Spring Oaks in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**ANSWER NO. 108**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

*Defendant WF EFS*

109.    Plaintiff's March 18, 2024, dispute specifically listed two accounts with Defendant WF EFS, bearing account numbers 277517712314**** (opened 09/20/2013) and 277517712314**** (opened 09/14/2012) as not belonging to Plaintiff.

**ANSWER NO. 109**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

110.    TransUnion communicated Plaintiff's dispute to Defendant WF EFS in automated consumer dispute verification ("ACDV") forms and copies of the dispute correspondence pursuant to 15 U.S.C. § 1681i(a)(2).

**ANSWER NO. 110**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

111.    In response, Defendant WF EFS erroneously responded and verified to TransUnion both accounts belonged to Plaintiff.

**ANSWER NO. 111**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

112.    Defendant WF EFS failed to conduct a reasonable investigation into Plaintiff's March 18, 2024, dispute, failed to review all relevant information available to it, and failed to update and/or remove the inaccurate accounts history, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Code) to "XB," and, instead, incorrectly verified to TransUnion that the accounts were being reported correctly, in violation of 15 U.S.C. § 1681s-2(b).

**ANSWER NO. 112**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

113.     Plaintiff has suffered actual damages in the form of hopelessness, stress, irritation, loss of sleep, anger, frustration, anxiety, and the weakening and diminishment of her credit profile, creditworthiness, debt-to-income ratio, and credit score, as a direct and proximate result of Defendant WF EFS's violations of the Fair Credit Reporting Act as described above.

**ANSWER NO. 113**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

114.     Defendant WF EFS's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**ANSWER NO. 114**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

115.     Alternatively, Defendant WF EFS's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

**ANSWER NO. 115**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage

is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

116.     Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant WF EFS in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**ANSWER NO. 116**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

### Inconsistent Dispute Results

117.     As further evidence of their failure to conduct a reasonable investigation into Plaintiff's disputes, Defendants Chase, WF EFS, and Aidvantage's investigation results in response to Plaintiff's dispute with TransUnion differed from their investigation results in response to Plaintiff's dispute with Experian.

**ANSWER NO. 117**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

118.     Plaintiff disputed the Defendant Chase account bearing account number 426684145773**** with both TransUnion and Experian.  In response, Defendant Chase deleted the account in response to Plaintiff's dispute with TransUnion and verified the account as accurate in response to Plaintiff's dispute with Experian.

**ANSWER NO. 118**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

119.    Plaintiff disputed the Defendant WF EFS account bearing account number 277517712314**** (opened 09/20/2013) with TransUnion and Experian.  In response, Defendant WF EFS deleted the account in response to Plaintiff's dispute with Experian and verified the account as accurate in response to Plaintiff's dispute with TransUnion.

**ANSWER NO. 119**:  The allegations contained in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

120.    Plaintiff disputed the Defendant Aidvantage account bearing account number 93042157071E0072017**** with TransUnion and Experian.  In response, Defendant Aidvantage deleted the account in response to Plaintiff's dispute with TransUnion and verified the account as accurate in response to Plaintiff's dispute with Experian.

**ANSWER NO. 120**:  Aidvantage denies the allegations in this Paragraph as stated and demands strict proof thereof.

121.    Plaintiff has suffered actual damages in the form of hopelessness, stress, irritation, loss of sleep, anger, frustration, anxiety, and the weakening and diminishment of her credit profile, creditworthiness, debt-to-income ratio, and credit score, as a direct and proximate result of Defendants' violations of the Fair Credit Reporting Act as described above.

**ANSWER NO. 121**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

122.   Defendants' conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**ANSWER NO. 122**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

123.   Alternatively, Defendants' violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

**ANSWER NO. 123**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

124.   Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**ANSWER NO. 124**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

## PLAINTIFF'S DAMAGES

125.     As a result of Defendants' inaccurate furnishing/reporting, Plaintiff has suffered reduced credit score and profile, emotional distress, frustration, and anxiety constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and § 1681n.

**ANSWER NO. 125**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

126.     Plaintiff is entitled to attorney's fees and costs from each Defendant pursuant to 15 U.S.C. § 1681o(a)(2) and § 1681n.

**ANSWER NO. 126**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

## RESPONDEAT SUPERIOR LIABILITY

127.    The acts and omissions of employees and other agents of Defendants who communicated with Plaintiff and/or with the CRAs were committed within the time and space limits of their agency relationship with their principal, Defendants.

**ANSWER NO. 127**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

128.    The acts and omissions by these agents were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendants.

**ANSWER NO. 128**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

129.    By committing these acts and omissions against Plaintiff, these agents were motivated to benefit their principal, Defendants.

**ANSWER NO. 129**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

130.     Defendants are therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its agents, including but not limited to violations of the FCRA.

**ANSWER NO. 130**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

**STANDING**

131.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

  a.     a valid injury in fact;
  b.     which is traceable to the conduct of Defendants;
  c.     and is likely to be redressed by a favorable judicial decision.

See *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016), and *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

**ANSWER NO. 131**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

132.     In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

**ANSWER NO. 132**:  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

*The "Injury in Fact" Prong*

133.    Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo. Id.*

**ANSWER NO. 133**:  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

134.    For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. In the present case, Defendants' actions negatively impacted Plaintiff's credit.

**ANSWER NO. 134**:  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

135.    For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way."  *Spokeo*, 136 S. Ct. at 1548. In the instant case, Plaintiff personally suffered worse credit and emotional distress.

**ANSWER NO. 135**:  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage denies the allegations in this Paragraph and demands strict proof thereof.

*The "Traceable to the Conduct of Defendants" Prong*

136.    The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that Plaintiff's injury is traceable to the conduct of Defendants.

**ANSWER NO. 136**:  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

137.    In the instant case, this prong is met simply by the facts that the violative conduct contemplated in this Complaint was initiated by Defendants directly, or by Defendants' agents at the direction of Defendants.

**ANSWER NO. 137**:  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage denies the allegations in this Paragraph and demands strict proof thereof.

*The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong*

138.    The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

**ANSWER NO. 138**:  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

139.    In the present case, Plaintiff's Prayers for Relief include a request for statutory and actual damages.  The damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.

**ANSWER NO. 139**:  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage admits only that Plaintiff's Prayers for Relief include a request for statutory and actual damages, but denies that Plaintiff is entitled to any such relief.  Except as so admitted, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the remaining allegations contained in this Paragraph and, therefore, denies them.

140.    Furthermore, the award of monetary damages redress the injuries of the past, and prevent further injury by Defendants in the future.

**ANSWER NO. 140**:  This Paragraph contains legal conclusions to which no response is required.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

141.    Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Plaintiff has standing to sue Defendants on the stated claims.

**ANSWER NO. 141**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

## TRIAL BY JURY

142.    Plaintiff is entitled to and hereby demands a trial by jury.  U.S. Const. amend.

VII; Fed. R. Civ. P. 38.

**ANSWER NO. 142**:  Aidvantage admits only that Plaintiff demands a jury.  Aidvantage

is without sufficient information or knowledge to form a belief as to the truth or falsity of any

remaining allegations in this Paragraph and therefore denies them.

## CAUSE OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681 *et seq*.

### AGAINST ALL DEFENDANTS

143.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint

as though fully stated herein.

**ANSWER NO. 143**:  Aidvantage incorporates by reference its responses to all of the

above paragraphs as its response to this Paragraph.

144.    Defendants Capital One, Chase, Spring Oaks, WF EFS, and Aidvantage, violated

15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the

disputed information, failing to review all relevant information available to it and documentation

provided by Plaintiff, and failing to update and/or remove the inaccurate tradelines or, in the

alternative, to report the accounts as "disputed" by changing the Metro II CCC (Compliance

Condition Codes) Code to "XB."

**ANSWER NO. 144**:  To the extent the allegations in this Paragraph are asserted against

Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict

proof thereof.  To the extent the allegations are asserted against other defendants, they require no

response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

145.    As a result of Defendants Capital One, Chase, Spring Oaks, WF EFS, and Aidvantage's violations of the FCRA, Plaintiff has suffered actual damages not limited to out-of-pocket expenses, detriment to her credit rating, emotional distress, embarrassment, mental anguish, anxiety, and humiliation in an amount to be determined at trial.

**ANSWER NO. 145**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

146.    Defendants Capital One, Chase, Spring Oaks, WF EFS, and Aidvantage's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

**ANSWER NO. 146**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

147.    Alternatively, Defendants Capital One, Chase, Spring Oaks, WF EFS, and Aidvantage's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

**ANSWER NO. 147**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict

proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

148.    Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendants Capital One, Chase, Spring Oaks, WF EFS, and Aidvantage in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**ANSWER NO. 148**:  To the extent the allegations in this Paragraph are asserted against Aidvantage, Aidvantage denies the allegations contained in this Paragraph and demands strict proof thereof.  To the extent the allegations are asserted against other defendants, they require no response, and further, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations contained in this Paragraph and, therefore, denies them.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants for:

- an award of actual and statutory damages against Defendants for their violations of the FCRA pursuant to 15 U.S.C. §§ 1681n and 1681o;
- an award of punitive damages against Defendants for their willful noncompliance with the FCRA pursuant to 15 U.S.C. § 1681n;
- an award of costs and attorney's fees against Defendants pursuant to 15 U.S.C. §§ 1681n and 1681o; and
- such other and further relief as the Court may deem just and proper.

**ANSWER TO PRAYER FOR RELIEF**:  The allegations in this Paragraph are not asserted against Aidvantage and, therefore, require no response.  To the extent a response is required, Aidvantage is without sufficient information or knowledge to form a belief as to the truth or falsity of the allegations in this Paragraph and, therefore, denies them.

Any allegations of the Complaint that are not specifically admitted herein are hereby denied.

## AFFIRMATIVE DEFENSES

### First Defense

Plaintiff's claims are barred, in whole or in part, for failure to state a claim on which relief can be granted.

### Second Defense

Plaintiff's claims may be barred by the applicable statute of limitations under the FCRA, 15 U.S.C. § 1681p.

### Third Defense

Plaintiff has failed to mitigate her damages, if any.

### Fourth Defense

Plaintiff's claims are barred by the doctrine of unjust enrichment.

### Fifth Defense

Plaintiff's alleged damages, if any, were not caused by any action by Aidvantage but were caused by the negligent, intentional, fraudulent, or otherwise, actions of Plaintiff or others over whom Aidvantage had no control and for whose actions Aidvantage is not responsible.

### Sixth Defense

To the extent Plaintiff suffered any injuries, which Aidvantage expressly denies, such injuries were the result of an intervening or superseding cause or the acts or omissions of third parties over which Aidvantage had no responsibility or control and for which Aidvantage may not be held liable.

### Seventh Defense

Aidvantage affirmatively invokes and asserts all defenses created by and under the Fair Credit Reporting Act.

### Eighth Defense

Plaintiff's claims for punitive damages against Aidvantage cannot be upheld to the extent they are in violation of any law passed by the United States Congress or the State Legislature limiting awards of punitive damages or the amount of such damages.

### Ninth Defense

Plaintiff has not sufficiently alleged, and cannot establish, malice, willfulness, or negligence on the part of Aidvantage.

### Tenth Defense

Plaintiff lacks standing to pursue her claims under Article III of the United States Constitution.

Aidvantage reserves the right to assert any additional affirmative defense that may become available as the result of further discovery in this lawsuit.

WHEREFORE, having fully answered or otherwise responded to the allegations in Plaintiff's Complaint, Aidvantage respectfully requests that judgment be entered in its favor dismissing this action with prejudice, denying all of the relief requested, and granting it such further relief as the Court deems appropriate.

Dated  July 11, 2024

By:  s/ Natalia S. Kruse
HUSCH BLACKWELL LLP
Natalia S. Kruse, MN Bar No. 0504307
80 South Eighth Street, Suite 2800
Minneapolis, MN  55402
612.852.2700
612.852.2701 (fax)
Natalia.Kruse@huschblackwell.com
*Attorneys for Maximus Education, LLC d/b/a Aidvantage*